**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re:<br><br>MAGNETATION LLC, *et al.*,<br><br>Debtors.<br><br>(includes:<br><br>Mag Lands, LLC<br>Mag Finance Corp.<br>Mag Mining, LLC<br>Mag Pellet LLC) | Jointly Administered under<br>Case No. 15-50307<br><br>Court File No. 15-50307 (WJF)<br><br>Court File Nos:<br><br>15-50308 (WJF)<br>15-50309 (WJF)<br>15-50310 (WJF)<br>15-50311 (WJF)<br><br>Chapter 11 Cases<br>Judge William J. Fisher |
| MAGNETATION LLC, *et al.*,<br>Plaintiff,<br><br>vs.<br><br>Northern Minnesota Water Conditioning, Inc. dba Range Water Conditioning,<br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, 549 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Magnetation, LLC and its chapter 11 affiliates, the debtors and debtors-in-possession in the above-referenced case (the "Debtors" or "Plaintiff"), by and through their undersigned counsel, file this complaint (the "Complaint") to avoid and recover transfers against Northern Minnesota Water Conditioning, Inc. dba Range Water Conditioning (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that

1

occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Debtors[1] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances. Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any transfers that were made after the Debtors commenced their bankruptcy cases and which transfers were not authorized by the Bankruptcy Code or this Court.

2.     In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of their rights to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.     This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Minnesota (the "Court"), captioned *In re Magnetation LLC, et al.,* Case No. 15-50307 (WJF) (the "Bankruptcy Case"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.     The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of

---

[1] The "Debtors" are all entities listed in the case caption.

2

Bankruptcy Procedure (the "Bankruptcy Rules"). This is an adversary proceeding within the meaning of Bankruptcy Rule 7001.

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

7. On May 5, 2015 (the "Petition Date") the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. On May 8, 2015, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Docket No. 72].[2]

9. On May 12, 2015, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

## THE PARTIES

10. On October 6, 2016, the Court entered an order [Docket No. 1004] (the "Wind Down Order")[3] (i) approving the Debtors' entry into a global settlement with their prepetition lenders and other key parties in interest and (ii) authorizing the Debtors to wind down their businesses. The Wind Down Order provided for, *inter alia*, the formation of a "Claims

---

[2] All docket items referenced are from Case No. 15-50307, under which the Debtors' bankruptcy cases are jointly administered.
[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Wind Down Order.

Oversight Committee" consisting of (1) Michael J. Talarico, (2) one member to be selected by the Committee, and (3) one member to be selected by the Ad Hoc Group. *Wind Down Order*, ¶ 79.

11.     The Wind Down Order also provides that the Debtors may not commence, settle or seek to settle any Avoidance Action without the written consent of the majority of the Claims Oversight Committee, which consent may be provided via email.

12.     Pursuant to the Wind Down Order, the Claims Oversight Committee has given its consent for the Debtors to pursue and settle the instant Avoidance Action.

13.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that sold and rented water softeners, water filters, water purification and water treatment equipment to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 1520 NW 3rd Avenue, Grand Rapids, MN 55744. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Minnesota.

## FACTUAL BACKGROUND

14.     As more fully discussed in the *Declaration of Joseph A. Broking in Support of the Debtors' Chapter 11 Petitions and First Day Motions*,[4] prior to the Petition Date, the Debtors were a natural resources company that focused on the design, development, construction and operation of facilities that produce iron ore concentrate and fluxed iron ore pellets from previously abandoned iron ore waste stockpiles and tailings basins on the Mesabi Range in northern Minnesota. The Debtors then sold the concentrate and pellets to steelmakers for use as raw input in their steelmaking processes. As of the Petition Date, the Debtors owned plants

---

[4] Docket No. 8, incorporated herein by reference.

located in Keewatin, Minnesota; Bovey, Minnesota; and Grand Rapids, Minnesota. The Debtors also operated a rail load-out facility in Colerine, Minnesota. Additionally, in 2013 and 2014, the Debtors constructed an iron ore pellet plant near Reynolds, Indiana. Once completed in 2014, the plant allowed the Debtors to process the majority of the iron ore concentrate it produced into iron ore pellets. Magnetation LLC is the direct parent and 100% owner of each of the other Debtors.

15. Prior to the Petition Date, the Debtors, as operators of facilities that produced iron ore concentrate and fluxed iron ore pellets, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

16. As operators of facilities that produced iron ore concentrate and fluxed iron ore pellets, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate their business.

17. The Debtors' financial difficulties that led to the decision to file petitions for bankruptcy are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things: (i) an unprecedented and unforeseen global collapse in many commodity prices, particularly iron ore, in the eighteen months prior to the Petition Date; (ii) a drop in demand for steel from domestic manufacturers as the market was flood by low price imports from abroad; and (iii) the intersection of the commodity price drop and decrease in domestic demand with the significant leverage incurred during the build-out of the Debtors' facilities.

18. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of a main operating account and an interest escrow account, both maintained at JPMorgan Chase Bank, N.A. ("JPMC")  [See Docket No. 14].

19. Among these bank accounts, disbursements to vendors were made from the main operating account ending 8910 held at JPMC by Magnetation LLC (the "Operating Account"). All of the Debtors' funds were also collected in this Operating Account. Upon information and belief, based upon the collection of all of the Debtors' funds from operations into the Operating Account and subsequent payment of the Debtors' accounts from the same account, the Debtor incurring each debt ultimately caused the payments on each of its debts issuing from the Operating Account.

20. During the ninety (90) days before the Petition Date, that is between February 4, 2015, and May 5, 2015 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities. The Debtors drew upon the Operating Account to pay for their operational costs, including to pay their vendors, suppliers, distributors, and other creditors, including Defendant.

21. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The

---

[5] More information on the cash management system can be found in the Debtors' *Notice Of Hearing and Joint Motion for an Order (I) Granting an Expedited Hearing, (II) Authorizing Maintenance of the Debtors' Existing Cash Management System, Purchase Card Program and Existing Bank Accounts and Business Forms And (III) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. 14], incorporated herein by reference.

Agreements concerned and related to the goods and/or services provided by Defendant as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

22. Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

23. As identified in the Agreements identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant or otherwise held a debt owed by one or more of the Debtors.

24. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

25. Plaintiff has determined that one of more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $7,825.00 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."  Additionally, to the extent there are any transfers that cleared the Operating Account after the Petition Date (the "Post-Petition Transfers"), such amounts are listed on Exhibit A and incorporated herein by reference.

26. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is

Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

27. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

28. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $7,825.00.

29. Each Transfer was made from the Operating Account described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

30. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

31. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

32. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

33. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

34. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

35. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

36. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

37. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

38. To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor that was not ultimately directed by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>"); and

    A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

    C. The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

39. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)**

40. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

41. To the extent any of the Transfer(s) identified on <u>Exhibit A</u> cleared the Operating Account after the Petition Date, including any Post-Petition Transfers currently listed on <u>Exhibit</u>

10

A, and such Transfers and were not authorized by the Court or the Bankruptcy Code, Plaintiff pleads in the alternative that such Post-Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

## COUNT IV
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548, and/or any Post-Petition Transfers pursuant to 11 U.S.C. § 549 (collectively, the "Avoidable Transfers").

44. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT V
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

47. Defendant is a transferee of transfers avoidable under sections 547, 548, and/or 549 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

49. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

A. On Plaintiff's First, Second, Third and Fourth Claims for relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and/or 549 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: May 3, 2017

**ASK LLP**

/s/ *Joseph L. Steinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 406-9665  ext. 850
Fax: (651) 406-9676
Email: jsteinfeld@askllp.com

*Counsel for the Debtors and Debtors in Possession*